UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 04-43 (GK) |
| ) | |
| DARREN A. FERGUSON, ) | **FILED** |
| ) | |
| Defendant. ) | JUL 0 8 2008 |
| ) | Clerk, U.S. District and Bankruptcy Courts |

UNITED STATES OF AMERICA      )
                             )
        v.                   )        Criminal No. 04-43 (GK)
                             )
DARREN A. FERGUSON,          )        **FILED**
                             )
           Defendant.        )        JUL 0 8 2008
                             )        Clerk, U.S. District and
                                      Bankruptcy Courts

<u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant's Motion to Dismiss the Indictment for violations of the Speedy Trial Act, 18 U.S.C. §§ 3161 <u>et seq</u>. (the "Act"). Upon consideration of the Motion, Defendant's supplemental memorandum submitted May 5, 2008, the Government's Opposition, the Defendant's Reply, and the supplemental memoranda submitted by both parties on June 9, 2008, the entire record herein, and for the reasons set forth below, Defendant's Motion to Dismiss the Indictment [**Dkt. No. 103**] is **granted** and the indictment is **dismissed without prejudice**.

I.    BACKGROUND

This case has a long and convoluted procedural history. Defendant was indicted on February 5, 2004 on one count of conspiracy to import five kilograms or more of cocaine and one thousand kilograms or more of marijuana into the United States and to knowingly manufacture or distribute the same with the intent that they would be unlawfully imported into the United States. The indictment alleged that the conspiracy lasted for at least seven

years and took place in the United States, the Bahamas, Colombia, and elsewhere. A substantial portion of the Government's case was based on intercepted telephone communications involving Defendant. During the course of the pretrial proceedings, the Government provided several hundred hours of recorded calls to the defense.

The Defendant was arraigned before Magistrate Judge Alan Kay almost exactly two years after indictment, on February 6, 2006. At the arraignment, the Government orally moved for a detention hearing.[1] The detention hearing was held on February 8, 2006 and the Defendant conceded the Government's request that he be held without bond pending trial. Following the detention hearing, Defendant retained Alan Soven, Esq. of Miami, Florida, as his counsel.[2] The first status conference was held on February 21, 2006, at which time Defendant requested that a further status conference be set in six weeks.

On March 3, 2006, the Government filed an unopposed motion to exclude time under the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq. The Court granted the motion the same day, finding that the complexity of the case and the resulting need for adequate

---

[1] The Government filed a written motion for pretrial detention on February 7, 2006.

[2] On February 10, 2006, the Court issued an order authorizing Soven to appear pro hac vice. On February 15, 2006, Soven filed a motion for admission pro hac vice. Given the Court's February 10, 2006 order, this motion was administratively terminated by the Court that same day.

preparation by counsel necessitated a continuance and that, therefore, the ends of justice outweighed the best interests of the public and the Defendant in a speedy trial under 18 U.S.C. § 3161(h)(8)(A).

The next status conference was held on May 5, 2006, at which time the parties jointly requested an additional status conference in June to allow for discussions concerning a possible disposition in the case. At the subsequently scheduled June 13, 2006 status conference, the parties once again jointly requested additional time to continue to negotiate a possible disposition.

Another status conference was held on July 14, 2006. At that time, the Government requested that the Court set a trial date. In order to accommodate the crowded trial calendars of all attorneys, the trial was set for January 8, 2007.

On November 9, 2006, the Government filed a motion to admit evidence pursuant to Fed. R. Evid. 404(b). The Defendant filed an opposition on February 15, 2007.

On November 27, 2006, the Government filed an unopposed motion to continue the trial date. The Government reported that it was experiencing difficulty in meeting with its witnesses to prepare for trial given their upcoming holiday and vacation plans in December. The Government also represented, without objection, that defense counsel needed additional time to prepare for trial, including time to summarize and catalog wiretapped communications

involving the Defendant and to prepare evidentiary motions. The next day, November 28, 2006, the Court granted the Government's unopposed motion and continued the January 8, 2007 trial date to an undetermined time.

The next status conference was held on January 5, 2007. At that hearing, the Defendant's counsel requested that a briefing schedule be set for the pretrial motions that he anticipated filing, but did not request that another trial date be set. A flurry of motions then ensued. On January 25, 2007, Defendant filed a motion to produce materials under Kyles v. Whitney, 514 U.S. 419 (1995), Brady v. Maryland, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500; a motion for a bill of particulars; a motion to dismiss the indictment; and a motion to compel production of discovery related to the Government's electronic surveillance of Defendant. These motions were fully briefed by February 21, 2007, and the Court held a motions hearing on March 8, 2007, at which time it ruled on all pending motions. At the hearing, the Court set a new trial date for September 10, 2007 as well as a briefing schedule for suppression motions.

The Defendant requested and received several extensions of the deadline for filing his motion to suppress evidence. In the interim, the Court held a telephonic status conference on May 22, 2007. During the conference Soven, Defendant's counsel, disclosed that he had previously represented an individual whose name had

appeared in the discovery provided to him by the Government.  Soven stated that should this individual be called to testify at trial, he would arrange for local counsel, Rudolph Acree, Esq., or a third attorney to handle cross-examination. After the status conference, Soven filed a brief notice of conflict on the docket again disclosing the existence of the conflict of interest and the name of his former client: Santino Whylly.  The Government took no action.

On May 22, 2007, Defendant filed a motion to compel the Government's compliance with the Court's March 8, 2007 Order.  On May 25, 2007, Defendant filed a motion to suppress wiretap evidence.

Another telephonic status conference was held on June 20, 2007 concerning these newly filed motions.  During the hearing, Defendant requested an evidentiary hearing on his motion to suppress wiretap evidence, which was later scheduled for July 18, 2007.

On June 21, 2007, Defendant filed a second motion to compel wiretap discovery.  The Government filed its opposition on June 29, 2007, and the Defendant filed a reply on July 6, 2007. On July 6, 2007, the Defendant also filed a new motion to suppress e-mails obtained from two of the Defendant's e-mail accounts pursuant to an order issued by a Magistrate Judge under the Stored Communications Act, 18 U.S.C. § 2703.  This motion was fully briefed by July 29,

2007.

On July 18, 2007, the Court held an evidentiary hearing to consider Defendant's motion to suppress wiretap evidence and his motion to compel compliance with the Court's March 8, 2007 Order. During the hearing, the Government presented the testimony of two officers of the Royal Bahamian Police Force and a special agent of the United States Drug Enforcement Administration. At the hearing, the Court denied Defendant's motion to compel compliance with the Court March 8, 2007 Order.   The Court also determined that it needed to hear evidence from additional Drug Enforcement Administration agents concerning Defendant's motion to suppress the wiretap evidence and therefore continued the evidentiary hearing to August 21, 2007. At the request of the Government, the Court also continued trial by one day to September 11, 2007, because Robert Spelke, Esq., the lead prosecutor, was scheduled to travel to and from Germany on official business immediately prior to September 10, 2007.

After the July 18, 2007 evidentiary hearing, Defendant continued to file additional motions.  On July 23, 2007, Defendant moved to continue the September 11, 2007 trial date to September 24, 2007, because trial would fall during the Jewish holidays, which was problematic for Defendant's counsel. At that time, the Government took no position on Defendant's request for such a short continuance.  At a telephonic status conference on August 7, 2007,

Soven informed the Court that his client had personally authorized his counsel to request the continuance. The Government stated that a September 24, 2007 trial date would no longer be acceptable because the Government's witnesses would be testifying in Miami on that date. The Court then granted Defendant's motion to continue and set a new trial date for October 9, 2007.

On August 2, 2007, Defendant filed a motion for production of expert witness discovery, and the Government filed an opposition on August 8, 2007. The Court issued an order on August 20, 2007 granting in part Defendant's motion.

On August 21, 2007, the Court held the continuation of the July 18, 2007 evidentiary hearing. The Government presented two Drug Enforcement Administration special agents as additional witnesses. The Court then took the Defendant's motion to suppress wiretap evidence under consideration. On September 10, 2007, the Court issued two memorandum opinions denying Defendant's motion to suppress wiretap evidence and his motion to suppress e-mail evidence. See United States v. Ferguson, 508 F. Supp. 2d 1 (D.D.C. 2007); United States v. Ferguson, 508 F. Supp. 2d 7 (D.D.C. 2007).[3]

On September 18, 2007, the Government filed a second motion to admit evidence pursuant to Fed. R. Evid. 404(b).

---

[3] On October 2, 2007, Defendant filed a motion for reconsideration of the Court's order denying his motion to suppress e-mail evidence. The Government filed an opposition on October 12, 2007. The Court denied the motion for reconsideration on December 21, 2007.

7

On September 26, 2007, the Government filed a motion requesting a hearing on a potential conflict of interest involving Soven, the same conflict of interest issue that Soven first raised May 22, 2007. While preparing Santino Whylly (one of its key witnesses) for trial, Whylly disclosed that he had previously been represented by Soven in a case in the Southern District of Florida in which he plead guilty to conspiracy to import cocaine into the United States and had been sentenced to 188 months imprisonment. Whylly had subsequently received a reduction in sentence pursuant to Fed. R. Crim. P. 35 as a result of his cooperation with the Government in that case. In its motion, the Government argued that Soven's representation of Defendant and past representation of Whylly created an actual conflict of interest and requested a hearing.

On October 1, 2007, the Court held another telephonic status conference to discuss the conflict of interest issue with counsel. The Court then scheduled a hearing for October 3, 2007, during which both Defendant and Whylly would be present.

Prior to the hearing, arrangements were made to provide both Defendant and Whylly with separate counsel for the purpose of providing advice concerning the conflict of interest issue. Danny Onorato, Esq. was appointed to represent Whylly and Michelle Peterson, Esq., Assistant Federal Public Defender, was appointed to represent Defendant. After hearing the arguments of all counsel

8

and personally questioning both Defendant and Whylly concerning their wishes, the Court determined that Soven had a conflict of interest that disqualified him from continuing to represent Defendant.   The Court then appointed Peterson and Shawn Moore, Esq., another Assistant Federal Public Defender, as Defendant's new counsel.[4]  New defense counsel stated that it would be premature to set a new trial date and requested a short continuance for another status conference so that they could start familiarizing themselves with the case.

A further status conference was held on October 16, 2007. Although the Government was ready to proceed to trial, new defense counsel stated that a December 1, 2007 trial date, which was suggested by the Court, was not realistic given the need to prepare an adequate defense and the voluminous discovery materials. Accordingly, the Court set another status conference for November 20, 2007, at the Defendant's request.   The Court also set new deadlines for briefing motions that had been filed just prior to Soven's disqualification.

On November 5, 2007, the Defendant filed an opposition to the Government's second motion to admit evidence pursuant to Fed. R. Evid. 404(b).  The Government filed its reply on November 9, 2007. The Court granted the Government's motion on December 12, 2007.

---

[4] Soven filed an unopposed motion to withdraw on October 9, 2007.  The motion was granted by minute order on October 11, 2007.

At the November 20, 2007 status conference, the parties requested that a new trial date be set for February 11, 2008.

Between January 9, 2008 and January 11, 2008, the Court issued writs of habeas corpus ad testificandum, at the request of the Government, for four witnesses held by the Bureau of Prisons in Florida. The writs were then expeditiously provided to the United States Marshals Service. Nevertheless, the Marshals Service later informed the prosecutors at the end of January that two of the Government's four witnesses would not be transported to the District of Columbia in time for the February 11, 2008 trial date.

As revealed in the Government's February 1, 2008 motion to continue the February 11, 2008 trial date, this was "as a result of a determination made by the Marshal's [sic] Service, [that] there would be no flights departing Florida [to transport the witnesses] during the middle two weeks in February." Gov't Mot. to Continue Trial Date at 2 [Dkt. No. 96]. The Government represented that the earliest date by which all of its witnesses would be present in the District of Columbia for trial was February 20, 2008. Id.

The Defendant agreed not to oppose the Government's motion to continue. A telephonic status conference was held on February 4, 2008 concerning the Government's motion to continue. The Court informed the parties that it had a complex six-week securities trial in S.E.C. v. Johnson, Civil Action No. 05-36 (GK), that was scheduled to begin with jury selection on March 3, 2008. Johnson

10

had previously been scheduled to go to trial on February 11, 2008, but on December 18, 2007, the Court had rescheduled that trial to begin on March 3, 2008 in order to hold the trial in this case. Numerous trial lawyers, with crowded schedules of their own, were involved in Johnson. At the February 4, 2008 status conference, the Court proposed trial dates in this case in April 2008, which were agreeable to the parties. The Court therefore set the new trial date in this case for April 14, 2008.

Jury selection in the Johnson case began on March 3, 2008 and a jury was empaneled and sworn on March 5, 2008. By early April it became apparent that trial in the Johnson case would not be concluded in time for the April 14, 2008 trial date in this case. Accordingly, on April 8, 2008, the Court issued a minute order continuing the April 14, 2008 trial date until May 5, 2008. At no time during all these many proceedings, except on March 3, 2006, did the Government ever move to exclude time under the Speedy Trial Act. Nor did Defendant ever assert his rights under the Act, with a single exception.[5] Consequently, the Court never addressed the issue and never made any findings under the Act.

Immediately before trial, on May 2, 2008, Defendant filed his Motion to Dismiss the Indictment which is presently before the

---

[5] At the October 3, 2007 hearing, Michelle Peterson, who was then representing Defendant solely for the purpose of the conflict of interest issue, claimed that Defendant's Speedy Trial Act rights had been violated.

11

Court. The Court took the Motion under advisement and proceeded to trial. Jury selection began on May 5, 2008 and a jury was empaneled and sworn on May 6, 2008. Following a two-week trial, on May 16, 2008, the jury returned a verdict of guilty on the sole count of the indictment.

The Government filed its Opposition to the Motion to Dismiss the Indictment on May 16, 2008. In light of the Court of Appeals' recent decision in United States v. Bryant, 523 F.3d 349 (D.C. Cir. 2008) concerning the Speedy Trial Act, the Court requested that the parties submit supplemental briefing. Both parties therefore filed supplemental memoranda on June 9, 2008.

## II.  ANALYSIS

### A.  The Speedy Trial Act

"[T]he Speedy Trial Act comprehensively regulates the time within which a [criminal] trial must begin." Zedner v. United States, 547 U.S. 489, 500 (2006). Under the Act, a defendant must be brought to trial within seventy days of the date the indictment was filed in his case, or from the date the defendant first appears before the Court, whichever date occurs later. 18 U.S.C. § 3161(c)(1). The Act sets forth specific categories of delay that shall be excluded from the computation of the seventy-day deadline. Zedner, 547 U.S. at 500; 18 U.S.C. § 3161(h). The Act serves not only to guarantee a defendant's right to a speedy trial, but also to protect the public interest in the fair and timely

12

administration of justice. Zedner, 547 U.S. at 500-01.

To assert his or her rights under the Act, a defendant must move to dismiss the indictment prior to trial. 18 U.S.C. § 3162(a)(2). If the Court determines that the defendant was not brought to trial within the time periods set out by the Act, the indictment must be dismissed. Id. In such case, the Court may choose to dismiss the indictment either with or without prejudice based on the following factors: "the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of the reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." Id.

With this general background in mind, the Court turns to the procedural history of this case to determine if a Speedy Trial Act violation occurred.

**B.    February 6, 2006 to March 3, 2006**

The Defendant was first brought before a judicial officer of this Court when he was arraigned before Magistrate Judge Kay on February 6, 2006. The seventy-day period under the Act therefore began to run on that day. See 18 U.S.C. § 3161(c)(1).

At the arraignment, the Government orally moved for a detention hearing, which was held on February 8, 2006. The delay caused by the filing of a motion for a detention hearing constitutes "delay resulting from any pretrial motion" under 18 U.S.C. § 3161(h)(1)(F) and is therefore excludable under the Act.

13

United States v. Moses, 15 F.3d 774, 776-77 (8th Cir. 1994).
Therefore, the two day period between arraignment on February 6,
2006 and the detention hearing on February 8, 2006 is excludable.

The Government argues that two further periods of time between
February 6, 2006 and March 3, 2006 are properly excludable.  First,
the Government points to Soven's motion for admission pro hac vice
filed on February 15, 2006.  However, the Court had previously
issued an order on February 10, 2006 admitting Soven pro hac vice.
Accordingly, Soven's February 15, 2006 motion was administratively
terminated by the Court on the same day.  No time is therefore
excludable as a result of this motion.

Second, the Government argues that Defendant's February 21,
2006 request for an additional status conference in six weeks
constituted a waiver of Defendant's rights under the Speedy Trial
Act for that period.  The Government cites United States v. Kucik,
909 F.2d 206, 210-11 (7th Cir. 1990), in support, which holds that
although "a defendant cannot generally waive his right to a speedy
trial under the statute," delays that were "caused or furthered" by
the defendant are properly excludable under the Act.  See also
United States v. Pringle, 751 F.2d 419, 434 (1st Cir. 1984)
(although waiver by defendant of rights under the Speedy Trial Act
was "inoperative," delay caused by the waiver was excludable).

Prospective waiver of a defendant's speedy trial rights is no
longer permissible following the Supreme Court's recent decision in

14

Zedner,[6] however, "because such an approach would bypass the Act's comprehensive scheme for granting ends-of-justice continuances and would eliminate consideration of the public's interest in a speedy trial." United States v. Sanders, 485 F.3d 654, 658 (D.C. Cir. 2007). In Zedner, the Supreme Court held that the Act purposefully did not include an exclusion for "periods of delay during which a defendant waives the application of the Act." 547 U.S. at 500. Instead, "the Act demands that defense continuance requests fit within one of the specific exclusions set out in subsection (h)." Id. The transcript of the February 21, 2006 status conference reflects that neither party argued that the continuance fit within one of the specific exclusions set out by the Act, nor did the Court make any findings that the continuance properly fell within any of those exclusions.

Thus, the period between February 6, 2006 and March 3, 2006 accounts for two excludable days as a result of the Government's motion for detention and twenty-three non-excludable days.

### C.    March 3, 2006 to September 10, 2007

On March 3, 2006, the Government filed an unopposed motion to exclude time under the Act on the basis that the case was "complex" pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii), and that the Court should therefore grant an "ends of justice" continuance under the Act because "the ends of justice served by taking such action

_____

[6] Both Kucik and Pringle were decided well before Zedner.

15

outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(8)(A).  That same day, the Court granted the Government's motion.  The Court found

> pursuant to 18 U.S.C. § 3161(h)(8)(A), that the ends of justice are served by granting a continuance of the trial and that this interest outweighs the best interest of the public and the defendant in a speedy trial.  The reason for this finding is that this case is complex due to the nature of the prosecution and that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Speedy Trial Act.

March 3, 2006 Order at 1.  The order stated that a trial date would be set at a future status conference.

Due to ongoing attempts to resolve the case through disposition, a trial date was not set until the July 14, 2006 status conference, at which time trial was set for January 8, 2007. However on November 27, 2006, as the January 8, 2007 trial date approached, the Government moved for an additional continuance of the trial date because of difficulties both parties had in preparing for trial.  In particular, the Government represented that the Defendant's counsel had been unable to summarize and catalog the numerous recorded telephone conversations involving the Defendant or to prepare evidentiary motions.  The Court therefore granted the motion on November 28, 2006, without setting a new trial date.

At a status conference held on January 5, 2007, the Defendant requested that a schedule for pretrial motions be set.  The Court

16

agreed and Defendant subsequently filed the four pretrial motions previously mentioned: a motion for disclosure of Kyles, Brady, and Jencks Act materials, a motion for a bill of particulars, a motion to dismiss the indictment, and a motion to compel discovery. The Court ruled on these motions at a motions hearing held on March 8, 2007, at which time it set a new trial date for September 10, 2007.

By its terms, the Court's March 3, 2006 Order granted an ends of justice continuance pursuant to 18 U.S.C. § 3161(h)(8)(A) until the next scheduled trial date, which was eventually set for January 7, 2007. Thus, the period between March 3, 2006 and January 7, 2007 is properly excludable under the Act.

Although the Court did not make specific findings in its November 28, 2006 Order continuing the January 7, 2007 trial date, the November 28, 2006 Order was based on the same findings specifically set forth in the March 6, 2006 Order. Both parties had expressed concerns that they would not be adequately prepared for trial on January 7, 2007. Once again this was due to the complex nature of this case, which involved a lengthy (seven year) and far-ranging (at least three other countries) conspiracy, as well as hundreds of hours of wiretapped communications involving the Defendant. The continuance of the January 7, 2007 trial date was therefore implicitly based on the finding of March 3, 2006 that the ends of justice were served by a continuance and that this interest outweighed the interest of both the defendant and the

17

public in a speedy trial.

This finding was not explicitly made on the record. However, the Supreme Court has held that although an ends of justice finding must be made by the trial court "if only in the judge's mind" prior to granting the continuance, the explicit finding need only be placed on the record at the time the Court rules on the defendant's motion to dismiss. Zedner, 547 U.S. at 506-07. Accordingly, the period between the originally scheduled trial date of January 7, 2007 and the subsequently scheduled trial date of September 10, 2007 is properly excluded under 18 U.S.C. § 3161(h)(8)(A).[7]

## D.    September 10, 2007 to February 11, 2008

At the July 18, 2007 evidentiary hearing, the Government had moved for the postponement of trial for one day, until September 11, 2007. The Court granted the requested continuance without

---

[7] Significant, but shorter periods of time would also be excluded under 18 U.S.C. § 3161(h)(1)(F) as a result of the numerous pretrial motions filed during this time, including, for example, the Government's first motion to admit evidence pursuant to Fed. R. Evid. 404(b) filed on November 9, 2006; the four motions filed by Defendant on January 25, 2007; the Defendant's motion to compel filed on May 22, 2007; the suppression motions filed on May 25, 2007 and July 6, 2007; the Defendant's second motion to compel filed on June 21, 2007; and the Defendant's motion for production of expert discovery on August 2, 2007. The Court held evidentiary hearings concerning certain of these motions on March 8, 2007, July 18, 2007, and August 21, 2007.

Therefore, the following periods are also excludable under Section 3161(h)(1)(F): November 9, 2006 to March 8, 2007 and May 22, 2007 to September 10, 2007. See Bryant, 523 F.3d at 359.

18

making any findings under the Act.

Five days later, on July 23, 2007, Defendant moved to continue the September 11, 2007 trial date because trial would conflict with Rosh Hashanah and Yom Kippur, which was problematic for Defendant's counsel, Alan Soven. The motion was unopposed by the Government and was granted by the Court following a telephonic status conference on August 7, 2007, when trial was rescheduled to begin on October 9, 2007. The Government does not argue that this continuance properly fits within any of the specific exclusions provided by the Act.

On September 18, 2007, the Government filed a second motion to admit evidence pursuant to Fed. R. Evid. 404(b). The Defendant filed his opposition to the motion on November 5, 2007,[8] and the Government filed a reply on November 9, 2007. The Court determined that an evidentiary hearing was not necessary to resolve the motion and granted the Government's motion on December 12, 2007.

"[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is properly excludable under the Act. 18 U.S.C. § 3161(h)(1)(F). In calculating delay caused by the filing of pretrial motions, the Act distinguishes between motions which require a hearing and motions where no hearing is

---

[8] The opposition was filed pursuant to a briefing schedule set after Peterson and Moore replaced Soven as defense counsel.

required and the motion is subject to "prompt disposition." Bryant, 523 F.3d at 359 (quoting Henderson v. United States, 476 U.S. 321, 329 (1986)).   In the latter situation, which is applicable here, the Act "permits an exclusion of 30 days from the time a motion is actually 'under advisement' by the court."   Id.

The Government's motion was "under advisement" following the filing of the Government's reply brief on November 9, 2007.   Thus, the Act permits an exclusion of up to thirty days from November 9, 2007, that is, until December 9, 2007.[9]

As discussed above, on September 26, 2007 the Government filed a motion requesting a hearing on the potential conflict of interest involving Alan Soven, Defendant's counsel.   The Court held a hearing concerning the matter on October 3, 2007, as a result of which Soven withdrew his appearance and Michelle Peterson and Shawn Moore were appointed as new defense counsel.

New defense counsel requested an additional status conference, which was held on October 16, 2007.   At that time, the defense stated that a proposed trial date of December 1, 2007 was not realistic and requested yet another status conference.   Finally, at

---

[9] The Court resolved the motion three days later, on December 12, 2007.   Defendant's motion for reconsideration of the Court's September 10, 2007 order denying his earlier motion to suppress e-mail evidence was also pending before the Court during the same time period.   The motion was filed October 2, 2007 and the Government filed its opposition on October 12, 2007.   Because no evidentiary hearing was required to resolve the motion, the period between October 2, 2007 and November 11, 2007 is also excludable pursuant to 18 U.S.C. § 3161(h)(1)(F).

20

the November 20, 2007 status conference, the defense informed the Court that it was ready to proceed to trial and a new trial date of February 11, 2007 was set. Although the Court did not at the time set forth on the record any specific findings pursuant to the Act, the Court granted this continuance due to the complex nature of the prosecution's case and the need to allow Defendant's new counsel adequate time to prepare for trial. See 18 U.S.C. § 3161(h)(8)(B)(ii); supra at p. 17. Therefore, the ends of justice served by the continuance outweighed the best interests of the Defendant and the public in a speedy trial. See 18 U.S.C. § 3161(h)(8)(A).

Thus, for the period between September 10, 2007 and February 11, 2007, only the eight-day period between September 10, 2007 and September 18, 2007 is non-excludable time under the Act. This eight-day period resulted from the motions of the Government and the Defendant for a continuance of the September 10 and then September 11 trial dates, which did not fall within any category of excludable time under the Act. On September 18, 2007, the Speedy Trial Act clock was once again stopped by the Government's filing of its second motion to admit evidence pursuant to Fed. R. Evid. 404(b). The period excludable under the Act as a result of this motion extended to December 9, 2007. After that date, the Act's time limits continued to be tolled under the ends of justice exclusion pursuant to 18 U.S.C. § 3161(h)(8)(A) because new defense

21

counsel were not prepared to proceed to trial until February 11, 2008, due to the complex nature of the case.

### E.    February 11, 2008 to April 14, 2008

In early January 2008, in anticipation of the February 11, 2008 trial date, the Government applied for, and the Court issued, writs of habeas corpus ad testificandum for four Government witnesses held by the Bureau of Prisons in Florida.  However, at the end of January, the United States Marshals Service informed the prosecutors that two of the Government's witnesses would not be transported to the District of Columbia in time for the February 11, 2008 trial date.  The Marshals Service explained that the delay was a result of its determination that no flights would leave Florida during the relevant time period.  The Government has provided no additional explanation or rationale for this unilateral decision of the Marshals Service.

On February 1, 2008, the Government accordingly filed a motion to continue the February 11, 2008 trial date, which was not opposed by Defendant.  According to the Government's motion, the earliest the Government's witnesses would be available for trial was February 20, 2008.  At a telephonic status conference held on February 4, 2008, the Court informed the parties that a six-week civil securities trial in SEC v. Johnson, Civil Action No. 05-36 (GK), involving three co-defendants and at least ten lawyers, was scheduled to begin March 3, 2006.  Trial in Johnson had already

22

been moved once previously in order to accommodate the February 11, 2008 trial date in this case. As a result, the Court proposed a trial date of April 14, 2008, which was agreed to by both the Government and Defendant. No objections were raised on Speedy Trial Act grounds and the Court did not make any findings under the Act when it scheduled the new trial date.

The Government advances two arguments concerning why the period between February 11, 2008 and the new April 14, 2008 trial date was properly excludable under the Act.

First, the Government argues that Defendant has waived his rights under the Speedy Trial Act because he consented to, or did not oppose, the continuance of the trial to April 14, 2008. As discussed above, a defendant cannot prospectively waive his or her rights under the Act. Zedner, 547 U.S. at 500-01. Thus, Defendant's failure to oppose the continuance of the trial date to April 14, 2008 is of no legal consequence.

Second, the Government argues that this period is excludable under 18 U.S.C. § 3161(h)(3)(A), which excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." Under this provision, an "essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence...." 18 U.S.C. § 3161(h)(3)(B). Unlike an ends of justice exclusion under 18 U.S.C. § 3161(h)(8)(A), no balancing

23

between the ends of justice and the interests of the defendant and the public in a speedy trial need take place under Section 3161(h)(3).    However, the Government has the burden of going forward with evidence to support an exclusion of time under Section 3161(h)(3).   18 U.S.C. § 3162(a)(2).

The Government has made no such showing in this case because it has failed to adequately explain the failure of the Marshals Service to transport its witnesses to the District of Columbia. Writs of habeas corpus ad testifcandum were approved by the Court and submitted to the Marshals Service by January 11, 2008.  Despite a month's notice, the Marshals Service managed to transport only two witnesses from Bureau of Prisons facilities in Florida before inexplicably and arbitrarily discontinuing flights from Florida for a two-week period in February 2008.[10]  The Government has therefore failed to meet its burden to come forward with evidence showing that it could not obtain the presence through due diligence of the two missing witnesses by the February 11, 2008 trial date.  Based on the record before the Court, it appears that the Marshals Service did not exercise due diligence in transporting these witnesses to the District of Columbia in a timely fashion.

Even if a continuance was proper under Section 3161(h)(3), it would only account for a nine-day delay following the February 11,

---

[10] If there is a justification for the actions of the Marshals Service, it has not been presented to the Court.

24

2008 trial date. According to the Government's motion for continuance, all witnesses would be available for trial by February 20, 2008. Therefore, the Government's argument does not account for the additional fifty-four day period between February 20, 2008 and the new April 14, 2008 trial date.

For these reasons, none of the time between February 11, 2008 and April 14, 2008 is properly excludable under the Act--a period of sixty-three days.

### F. April 14, 2008 to May 5, 2008

Jury selection in the civil Johnson trial began on March 3, 2008 and a jury was empaneled and trial began two days later. Although counsel in Johnson had estimated that six weeks would be sufficient to try the case, it became apparent by early April that the trial would not be concluded in time for jury selection to begin in this case on April 14, 2008. Therefore, on April 8, 2008, the Court issued a minute order continuing trial in this case to May 5, 2008. The Court did not make any specific findings concerning this continuance under the Act.

The Government argues that the period of delay caused by this continuance is excludable under the Act because "the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(8)(B)(i). An ends of justice continuance under Section 3161(h)(8)(A) is therefore

25

appropriate, according to the Government.

This argument suffers from two critical defects. First, the Court did not make such a finding under Section 3161(h)(8)(A). Second, even if it had, the Act provides that an ends of justice continuance may not be granted "because of general congestion of the court's calendar." 18 U.S.C. § 3161(h)(8)(C). In particular, the trial of another case (particularly the trial of a civil case) is not a permissible ground to grant a Section 3161(h)(8)(A) ends of justice continuance. United States v. Ortega-Mena, 949 F.2d 156, 159-60 (5th Cir. 1991). Therefore, the period of delay caused by the continuance of the trial to May 5, 2008 is not excludable under the Act.

Finally, on May 2, 2008, the Defendant filed the present Motion. This tolled the speedy trial clock until trial commenced with jury selection on May 5, 2008. 18 U.S.C. § 3161(h)(1)(F). Thus, only the period between April 14, 2008 and May 2, 2008, or eighteen days, is not excludable under the Act.

## G. More Than Seventy Non-Excludable Days Elapsed Between Defendant's First Court Appearance and Trial

For the reasons set forth above, a total of 112 non-excludable days passed between Defendant's arraignment and the commencement of trial during the following periods:

- February 8, 2006 to March 3, 2006 (23 days);
- September 10, 2007 to September 18, 2007 (8 days); and
- February 11, 2008 to May 2, 2008 (81 days).

26

Because a defendant must be brought to trial within seventy non-excludable days following his first court appearance, 18 U.S.C. § 3161(c)(1), the Defendant's right to a speedy trial under the Act has been violated. The Act provides that if "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). Dismissal shall be either with or without prejudice. Id.

## H.   The Indictment Is Dismissed Without Prejudice

The Act provides that "the court shall consider, among others, each of the following factors" in determining if the indictment should be dismissed with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." Id. The determination, based on these factors, is "left to the guided discretion of the district court" and the Act gives no priority to either remedy. United States v. Taylor, 487 U.S. 326, 335 (1988). To enable "meaningful appellate review" the "district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect." Id. at 336. The Court therefore turns to the consideration of each factor.

## 1. The Seriousness of the Offense

The Defendant was convicted of conspiracy to import five kilograms or more of cocaine and one thousand kilograms or more of marijuana into the United States and to knowingly manufacture or distribute the same with the intent that they would be unlawfully imported into the United States. There can be little doubt that this is a very serious offense involving massive quantities of drugs. Based on the evidence presented at trial, the Defendant was a major player in this conspiracy, which took place over a period of approximately seven years and involved transporting vast amounts of drugs by aircraft and boat from Colombia, through various countries in the Carribean, and finally into the United States. In sum, the evidence showed the Defendant to be a major drug trafficker. Thus, the seriousness of the offense weighs very heavily in favor of dismissing the indictment without prejudice.

## 2. The Facts and Circumstances Leading to Dismissal

In Taylor, the Supreme Court held that evidence of bad faith on the part of the Government or a pattern of neglect by prosecutors in meeting their obligations under the Act supports dismissal with prejudice. 487 U.S. at 339. An "[i]solated unwitting violation" of the Act, on the other hand, favors dismissal without prejudice. Id. As our Court of Appeals has stated, "the decision of whether to dismiss with or without prejudice already assumes the Government's failure; the inquiry

becomes <u>why</u> the Government failed." <u>United States v. Wright</u>, 6 F.3d 811, 814 (D.C. Cir. 1993) (emphasis in original).

Here, the Government's failure to bring Defendant to trial within the time requirements set out under the Act was partly the result of inattention on the part of the prosecutors (from the Narcotics and Dangerous Drug Section of the Criminal Division of the Department of Justice, not our local United States Attorney's Office) to their obligations under the Act. The major share of responsibility, however, rests with the United States Marshals Service, which inexplicably failed to transport the Government's witnesses to the District of Columbia for the February 11, 2008 trial date, despite receiving writs for these witnesses a month before trial.[11] Had the Marshals Service transported the witnesses to the District of Columbia in a timely fashion, there is no question that trial would have commenced on February 11, 2008 and the congestion of the Court's calendar caused by the civil trial in <u>Johnson</u> would have been avoided. Thus, but for the conduct of the Marshals Service, there would have been only thirty-one non-excludable days (February 8, 2006 to March 3, 2006 and September 10, 2007 to September 18, 2007), and the Speedy Trial Act would not have been violated.

The Government argues that much of the delay in this case was

---

[11] This appears to be a long standing problem with the Marshals Service. <u>See</u> <u>Taylor</u>, 487 U.S. at 330.

attributable to Defendant's various requests for continuances.  It is true that defense counsel always consented to the continuance of the trial date and, with the exception of Ms. Peterson's speedy trial arguments at the October 3, 2007 hearing that were made in the context of the conflict of interest issue and prior to her appointment as regular defense counsel, counsel never raised Defendant's speedy trial rights prior to the filing of the instant motion.

On the other hand, of the 112 <u>non-excludable</u> days that elapsed prior to trial, the defense was the cause of only seven--the period between September 11, 2007 and September 18, 2007 that is attributable to Soven's motion for a continuance of the September 11, 2007 trial date because it conflicted with the Jewish holidays.[12]  The remaining periods of delay, for which defense counsel were often responsible, consist entirely of excludable time under the Act.  Thus, the actions of the Defendant and his counsel were not the cause of the Speedy Trial Act violation in this case. Had such actions been the cause, there would be even a stronger argument in favor of dismissal without prejudice.  <u>See Taylor</u>, 487 U.S. at 343 (Defendant's "illicit contribution to the delay" tends to support dismissal without prejudice).

While there is no evidence of bad faith on behalf of the

---

[12] The Government moved for the continuance of the trial date from September 10, 2007 to September 11, 2007 and is therefore responsible for the resulting one-day delay.

Government or of a deliberate attempt to flout the Defendant's speedy trial rights, these delays were the result of neglect and carelessness by the Government.  There is no indication, though, that these actions constituted part of a larger pattern of neglect by either the Narcotics and Dangerous Drugs Section or the Marshals Service, with the exception of the delay caused by the Marshals Service twenty years ago in <u>Taylor</u>.  Indeed, the Court recognizes that the individual prosecutors were personally eager to try the case and that the Government repeatedly represented that it was ready to proceed to trial.

Accordingly, the facts and circumstances leading to dismissal weigh in favor of dismissing the indictment without prejudice.

### 3.   The Impact of Reprosecution

In determining the impact of reprosecution on the administration of the Act and the administration of justice, the Supreme Court has acknowledged that "dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." <u>Taylor</u>, 487 U.S. at 342.  However,

> Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds.  Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely.  If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other

31

factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

Id. In addition to the impact of reprosecution on the Government, the district court must consider any possible prejudice resulting to the Defendant as a result of the delay as well as any "illicit" contribution by the Defendant to the delay. Id. at 343. Finally, these factors should not be viewed in isolation from each other. Wright, 6 F.3d at 816. "Whether a dismissal without prejudice will have an adverse impact on the administration of the Act or on the administration of justice depends, in large part, on the seriousness of the defendant's alleged crime and on the reasons for the delay." Id.

Here, the Government expended significant effort and resources in trying this case. If the case is dismissed without prejudice and the Government chooses to reprosecute, it will be obligated to seek a new indictment and once again go through the substantial time, effort, and expense of another trial. Nor is there any guarantee that a jury will once again convict the Defendant, given the skepticism with which jurors often view the testimony of cooperating witnesses. Thus, dismissal without prejudice would still send a strong message to the Government, albeit not nearly so much as a dismissal with prejudice.

Furthermore, the Defendant does not claim that he was prejudiced by the delay in bringing him to trial. To the contrary, the Defendant has now received a full preview of the Government's

evidence and trial strategy, which will likely be of benefit to him in the course of any future reprosecution.   Additionally, the memories of witnesses fade with time and at a second trial the Government's witnesses may be impeached with their testimony from the first trial.   The lack of prejudice to the Defendant strongly weighs in favor of dismissal without prejudice.

The impact on the public interest in the administration of justice is the final factor for consideration.   The public has a strong interest in ensuring that criminal prosecutions are brought to completion with an ultimate adjudication of the substantive merits of the case.   The public expects that the innocent will be exonerated and that the guilty will be convicted following a fair, impartial--and speedy--trial.   It does not serve the public interest, though, to immunize a defendant who has already been found guilty by a jury of his peers, as in this case, from further prosecution because of a procedural error that has not prejudiced him.

Finally, this factor must be viewed in light of the seriousness of the offense and the circumstances leading to dismissal, both of which counsel in favor of dismissing the indictment without prejudice.   Although a dismissal with prejudice would send the strongest possible signal to the Government, dismissal without prejudice is not "a toothless sanction," Taylor, 487 U.S. at 342, especially because Defendant has not suffered any

prejudice from the delay, and would, for the reasons stated, adequately convey the seriousness of the Government's Speedy Trial Act violation.

Accordingly, the Court concludes that the indictment should be **dismissed without prejudice.**

**III. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss the Indictment on Speedy Trial Act grounds [**Dkt. No. 103**] is **granted** and the indictment is **dismissed without prejudice.** The accompanying order will be **stayed** for five days to permit the Government to seek appellate review.

July 8, 2008

Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**